**Josephine RANGE, Plaintiff,**

v.

**Caspar WEINBERGER, etc., Defendant.**

**Civ. A. No. 2922.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

April 6, 1973.

David F. Bautista, Elizabethton, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for judicial review of the decision of the defendant administrator, 42 U.S.C. § 405(g), denying the plaintiff's application for disability benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423. Both parties have moved for summary judgment, Rule 56, Federal Rules of Civil Procedure.

The plaintiff first filed an application for disability benefits on July 17, 1969, which application was denied on September 4, 1969. On June 29, 1970, the plaintiff filed application to establish a period of disability and for disability benefits, alleging that she became unable to work on January 6, 1969, because of arthritis and a cracked vertebra. This application was denied initially and on reconsideration. A hearing was held before an examiner on August 13, 1971 and on October 27, 1971, he found that the plaintiff was entitled to the establishment of a period of disability beginning August 9, 1969 and to disability benefits under the Act. However, an appeals council, on its own motion, reviewed the examiner's decision and, after receipt of additional evidence, on June 7, 1972, reversed the decision of the examiner, holding that the plaintiff is not entitled to a period of disability or to benefits under the Act. The final decision of the defendant Secretary,

which this Court is authorized to review, 42 U.S.C. § 405(g), therefore is the decision of such appeals council. Laws v. Celebrezze, C.A.4th (1966), 368 F.2d 640, 642.

The appeals council found, *inter alia*:

\*    \*    \*    \*    \*    \*

2. The [plaintiff] completed the eighth grade and worked for 13 years as an undergarment inspector and boxer. Previously she worked for about 14 years as a sewing machine operator.

3. The [plaintiff] retains the functional capacity to perform her usual type of work as well as her former job as a sewing machine operator.

4. The evidence fails to establish that the [plaintiff's] impairments prevented her from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision which has lasted or can be expected to last at least 12 months.

\*    \*    \*    \*    \*    \*

Such findings are not supported by substantial evidence. The plaintiff testified at her hearing that she had an eighth-grade education. She first worked in a restaurant, primarily running an ice cream stand. She then went to work as a machine operator for North American Rayon Company, now known as Beaunit Fibers. Her work there was in the reeling department, running yarn off of a bobbin on the machine and basting the yarn. This job required her to stand and lift. Following this, she went to work for East Tennessee Undergarment Company, where she was employed for 14 years up until she fell in the company parking lot, which fall she claims started her period of disability. At East Tennessee Undergarment Company, the plaintiff was an inspector of garments on an assembly line. That job required the constant lifting, sorting, and packing of fairly heavy boxes of undergarments. There is no evidence whatever in this record that the plaintiff ever worked at a sewing machine; all of

her employment has been at jobs requiring standing, lifting, and constant moving around.

Following her fall in January of 1969, the plaintiff was treated on a weekly basis by Dr. E. T. Pearson, a general practitioner, for pains in her back and legs. A report of August 9, 1969 submitted by Dr. Pearson reflected a diagnosis of arthritis of the back and extremities. As of January, 1971 Dr. Pearson continued to diagnose spinal arthritis, mainly in the neck area.

On November 11, 1969, the plaintiff was seen by Dr. E. E. Perry, a general practitioner, who found a compression fracture of the P–4 vertebrae body with wedge formation enteriorly with a moderate degree of concave depression of the P–5 vertebrae. He stated:

\*    \*    \*    \*    \*    \*

The compression of the fourth vertebrae body and a concave depression of the fifth dorsal vertebrae body, will, of course, cause loss of longitudinal length of the dorsal spine. This will lead to intervertebral disc disease in this area which is already apparent. Also, this compression usually leads to compression of the nerve roots as they exit from the foramen in this area. The pain and discomfort which this patient has experienced could well be predicted from evaluating the x-ray films of this region. The fracture has, of course, aggravated and excellerated [sic: accelerated] the osteoporotic and osteoarthritic conditions present in this area.

PROGNOSIS: Since these fractures have resulted in loss of body substances and compression of the vertabrae in this area and if these will not heal this is, of course, permanent. It is expected that the patient will experience pain and discomfort in the future especially after work. It is also expected that this will be progressive.

\*    \*    \*    \*    \*    \*

On May 18, 1970, the plaintiff was examined by Dr. Sam Huddleston, an orthopedic surgeon. X-rays of the lumbar

spine at that time showed rather marked osteoporotic changes with marked narrowing and sclerosis of the lumbosacral interspace. He considered the plaintiff's symptoms to be bona fide and due to the degenerative changes in both the neck and low spinal area. He stated:

* * * The greater occipital nerve pain that she is having up into the skull is probably associated with some nerve root encroachment in the area of the congenital fusion. I do not believe that any medical treatment would substantially reduce her symptoms. * * *

Dr. James G. McFaddin, an orthopedic surgeon, examined the plaintiff on January 19, 1971 for the Secretary, and found, *inter alia*:

* * * From the physical findings and x-ray studies in this case, the undersigned is unable to establish any significant degree of orthopaedic impairment—certainly nothing of an incapacitating nature. To me it would appear she is able to continue work of a moderate nature, consistent with her age. She is able to walk, stand, climb stairs, and move about quite normally. *She might well experience some difficulty in bending or using the back in the flexed position over prolonged periods.* * * * [Emphasis supplied.]

The plaintiff was examined on August 10, 1971, by Dr. Henry J. Williams, another orthopedic surgeon, who found some progression of narrowing at her L–5 interspace, evidence of further degenerative disc disease secondary to osteoarthritis, but no significant progression of her osteoarthritis at other levels. He found that she had two recurrent episodes of coccydynia, pain at the tip of the sacrum in the region of her sacrococcygeal joint, both of which were responsive to medication; however, he further found that said problems were certain to recur off and on in the future.

Dr. Dillard M. Sholes, Jr., a gynecologist, examined the claimant on December 2, 1971, and found:

* * * * * *

Pelvic examination: * * * The mucosa of the vagina and the skin of the vulva are atrophic (estrogen deficiency). On bimanual examination the uterus is seen to be prolapsed and there is a loss of the urethrovesical angle of the vagina. * * * Musculoskeletal systems: Subjectively she has pain all along her vertebral column, more pronounced over the lumbo-sacral apine [sic: spine]. There is extreme tenderness over the Lumbar 5 Sacral 1 joint when pressure is applied. Also, there is tenderness over all of the apine [sic: spine]. Straight leg raising causes pain in the low back. * * *

* * * * * *

OPINION: This lady is totally and permanently disabled as far as doing any substantial physical labor because of osteoporosis for which there is no known cure. Any physical activity in which she might use her back would cause unbearable pain, and could conceivably lead to spontaneous compressed fractures in the bony vertebral bodies.

In March, 1972 the claimant was examined by Dr. Merritt B. Strobe, again at the request of the Secretary. He found:

* * * * * *

IMPRESSION: This patient has osteoporosis, for which she is taking hormone therapy. On the basis of her history and findings, it would appear that the patient could do normal work that does not involve heavy lifting. However, since her job does involve heavy lifting, she is obviously restricted in doing this, although she could do light to moderate lifting. * * *

She needs treatment for the osteoporosis, in the form of hormones, a high protein diet, etc. I believe the patient could do some type of light or sedentary work; she could not do heavy work that involves lifting.

Based on the past medical recommendations, her age, and the type of work she does, the patient is unable to re-

turn to work from both a physical and psychological viewpoint. If light or sedentary work could be made available, it is my opinion that she could do it. * * *

The plaintiff had the burden of proving her disability within the meaning of the Act. 42 U.S.C. §§ 416(i), 423; Osborne v. Cohen, C.A.6th (1969), 409 F. 2d 37, 39 [2]. The findings of the Secretary, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); King v. Celebrezze, C.A.6th (1965), 341 F.2d 108, 109. " * * * We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. N. L. R. B., [(1938)] 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' Labor Board v. Columbian Enameling & Stamping Co., [(1939)] 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, 665, * * *" Consolo ,v. Federal Maritime Comm. (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 16 L.Ed.2d 131, 140–141 (headnote 9).

■ In determining the substantiality of the evidence to support the defendant's final decision, the Court looks, *inter alia,* to the findings of the hearing examiner. Universal Camera Corp. v. National L. R. Bd. (1951), 340 U.S. 474, 496–497, 71 S.Ct. 456, 95 L.Ed. 456, 472 (headnote 13). The examiner was in a better position to visualize the plaintiff returning to her prior employment than anyone viewing the facts since. " * * * [The plaintiff] had no way of establishing [her] case if [her] credible medical evidence is disregarded. * * *" Hall v. Celebrezze, C.A.6th (1963), 314 F.2d 686, 690 [2]. The evidence is uncontradicted that this plaintiff suffers from constant pain. " * * * The fact that there is such a subjective symptom as pain of [the plaintiff] for social security benefits does not mean that it ranks as a lesser type of disability. * * *" Sayers v. Gardner, C.A.6th (1967), 380 F.2d 940, 948 [2–4]. Drs. Pearson, Perry, Huddleston, Sholes and Strobe, each found the plaintiff to be suffering from arthritis, subjective pain, and osteoporosis. They found that any activity which would involve using her back would be harmful to her. Even Dr. McFaddin found that the plaintiff might well experience some difficulty in bending or using the back in the flexed position over a prolonged period of time. Despite the erroneous finding of the appeals council that the plaintiff had worked as a sewing machine operator, the record clearly shows that the only jobs ever done by the plaintiff involved prolonged standing and frequent lifting. The evidence is clear and convincing that the plaintiff is unable to return to her last employment.

There is substantial evidence in the record supporting each finding of the examiner; there is not substantial evidence to support the findings of the appeals council. Although it might be argued in the light of the reversing findings of the defendant's council that the proof of the plaintiff's disability was not strong, and that there was evidence to the contrary which was not lacking in substance, the plaintiff's claim for benefits has been pending for more than three years. This Court sees no reason to remand the case for the taking of further cumulative testimony. *Cf.* Sayers v. Gardner, C.A.6th (1967), 380 F.2d 940, 955 [11].

Accordingly, judgment will enter overruling the defendant's motion for summary judgment, granting the plaintiff's motion for same, and remanding this action to the defendant Secretary, with directions for the Social Security Administration to award the plaintiff the disability benefits she claims, consistent with the original opinion of the hearing examiner.